

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00163-CR
_____

FERNANDO PENA, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 242nd District Court
Hale County, Texas
Trial Court No. B19587-1401, Honorable Edward Lee Self, Presiding

June 4, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

A jury convicted appellant Fernando Pena of one count of indecency with a child by sexual contact[1] and assessed punishment at eight years' confinement in prison and a $5,000 fine. He was sentenced accordingly. Through three issues, appellant complains the trial court abused its discretion by failing to include in the jury charge a unanimity instruction. Appellant further contends he was egregiously harmed by the error. We find the trial court erred in failing to submit a unanimity instruction, but

_____

[1] TEX. PENAL CODE ANN. § 21.11(a)(1) (WEST 2011).

appellant was not egregiously harmed. We will therefore affirm the judgment of the trial court.

Background

The single-count indictment alleged "on or about the 1st day of June, 2013, . . . [appellant] did then and there with the intent to arouse or gratify the sexual desire of said [appellant], intentionally or knowingly engage in sexual contact with B.G. by touching the genitals of B.G., a child younger than 17 years and not the spouse of [appellant]."

At trial, nine-year-old B.G. testified that while visiting her uncle's home, she and appellant sat on a living-room couch watching television. Appellant touched her "private spot," what she called her "nana," with his hands, under her pajamas and underwear. It is not disputed that the child's reference to her "private spot" and "nana" referred to her genitals. B.G. could not recall the exact date of this occurrence. B.G. told no one at the time.

B.G. testified of another visit to her uncle's home. The occasion was a party celebrating her ninth birthday in July 2013. During the visit, she was seated in a room by the back door watching television. The room was furnished with brown chairs. Appellant joined her in the room and touched her "nana" over her clothing with his hands. B.G. again told no one of the occurrence.

On her own initiative, B.G. later made an audio recording on an electronic video game device. During her trial testimony she agreed with the prosecutor that in the

2

recording she "sa[id] what Freddie had done."[2]  B.G.'s stepfather testified he later overheard the recording and told her mother what he heard.  Police were contacted.

When B.G. was asked at trial if "Freddie" ever made her touch him, she answered he once "grabbed [her] hands (sic) and put it in his pants" touching his skin.  She could not say if this conduct occurred the "first time" appellant touched her or later on her birthday.

A worker at the Children's Advocacy Center (CAC) interviewed B.G.  The worker testified at trial but she was not treated as an outcry witness and did not testify to B.G.'s statements to her.  B.G. did not receive a medical examination and no medical evidence was presented at trial.

Appellant, approximately 60 years old, is related by marriage to A.A., the wife of B.G.'s uncle.  B.G.'s uncle and his wife, A.A., each testified for the defense, and were the only defense witnesses.  Their testimony indicated they frequently hosted family gatherings.  The uncle was emphatic that at no time were B.G. and appellant alone while visiting at his house.  Without equivocation, he further testified that appellant was not present at B.G.'s birthday party.  When asked on cross-examination why he did not believe B.G., the uncle explained he had known appellant for sixteen or seventeen years and "you start to know people, and I honestly believe that he didn't do it."  Nine photographs were admitted for the defense through A.A.  Seven depicted B.G.'s birthday party.  Appellant did not appear in any of these photographs but A.A. indicated that not all birthday-party guests appeared in the photographs.  Like her husband, A.A.

---

[2] It is not disputed that "Freddie," as used by B.G. in her trial testimony, meant appellant.

was certain appellant was not present at B.G.'s birthday party. On cross-examination, A.A. testified she was "certain" also that only once were B.G. and appellant both present at her house. That occasion, she said, was a September football party. A.A. also said the conduct B.G. alleged "didn't happen."

In the jury charge, the application paragraph asked whether appellant engaged in the conduct alleged "on or about June 1, 2013." An instruction informed the jury about the date of the offense:

> The State is not bound by the specific date which the offense, if any, is alleged in the indictment to have been committed. A conviction may be had upon proof beyond a reasonable doubt that the offense, if any, was committed at any time prior to the filing of the indictment which is within the period of limitations. The date of the filing of the indictment in this case was January 31, 2014. There is no limitation period applicable to the offense of indecency with a child by sexual contact.

Although B.G. testified appellant unlawfully touched her on two occasions the jury was not specifically instructed in the charge that it had to agree unanimously on a single, discrete occurrence constituting the commission of the charged offense.[3] Rather, the only mention of unanimity in the charge at the guilt-innocence phase was the following general instruction:

> After you retire to the jury room, you should elect one of your members as your Presiding Juror. It is the duty of the Presiding Juror to preside at your deliberations, to vote, and, if you unanimously agree upon a verdict, to certify your verdict by completing and signing the verdict form.

Neither side objected to the absence of a specific unanimity instruction.

In closing argument, the prosecutor stated:

---

[3] *Cosio v. State*, 353 S.W.3d 766, 771, 772 (Tex. Crim. App. 2011).

4

If you believe it happened, and you believe it happened anytime between January 31, 2014, back through eternity. I guess it would be back through [B.G.'s] birth day, the actual day she was born. If you believe it happened during that time period, then on or about June 1, 2013 is sufficient.

Later in the argument he added:

If you believe this happened, and there's no reason to not believe this other than you just don't want to, and you believe it happened before January 31, 2014, while [B.G.] was alive, which all the evidence shows.

Still later he argued:

If you believe he did it, and I would submit to you the evidence doesn't show anything else, then he has to be found guilty. I mean, in fact, look at Defendant's 8. There's that brown chair by the TV in the side room by the kitchen that she described for you. Ladies and gentlemen, she's not making this up.

Appellant was convicted and sentenced as noted.

Analysis

Appellant argues the trial court abused its discretion by failing to submit a charge containing a specific unanimity instruction. Because this complaint was not made at trial, appellant further asserts that he was egregiously harmed by the error.

Necessity of a Specific Unanimity Instruction

The verdict of a jury must be unanimous about the specific crime the defendant committed. *Cosio,* 353 S.W.3d at 771 (citing *Landrian v. State,* 268 S.W.3d 532, 535 (Tex. Crim. App. 2008)). "[T]he jury must 'agree upon a single and discrete incident that would constitute the commission of the offense alleged.'" *Cosio,* 353 S.W.3d at 771 (quoting *Stuhler v. State,* 218 S.W.3d 706, 717 (Tex. Crim. App. 2007)). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions."

*Cosio,* 353 S.W.3d at 772. Each occurrence of the charged offense constitutes a different offense or unit of prosecution. *Id.* In such cases, it is the trial court's obligation to submit a charge instructing the jury "that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.* at 772, 776 (stating even when the State is not put to an election, the trial judge must prepare a charge ensuring a unanimous verdict based on the specific evidence presented). This duty is not discharged through a "boilerplate" instruction informing the jury that its verdict must be unanimous because the jury might understand the direction to mean it must be unanimous about the offense in general and not a specific occurrence constituting the charged offense. *Cosio,* 353 S.W.3d at 773-74 (citing *Ngo v. State,* 175 S.W.3d 738, 745 (Tex. Crim. App. 2005)). Rather, "the jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt." *Id.* at 776. "Such an instruction should not refer to any specific evidence in the case and should permit the jury to return a general verdict." *Id.*

The State argues a unanimity instruction was not required because appellant was charged with only one offense, indecency with a child by touching the genitals. When, it continues, the evidence presents multiple occurrences of the conduct alleged by the indictment the defendant may require the State to elect which of the charged acts it will rely on for conviction. But here appellant did not request an election.

Avoiding a unanimity problem when one offense is charged but the evidence shows the defendant committed the offense on multiple, separate occasions is ultimately the responsibility of the trial court. *See Cosio,* 353 S.W.3d at 776

6

("guaranteeing unanimity is ultimately the responsibility of the trial judge because the judge must instruct the jury on the law applicable to the case"). A unanimous verdict is ensured in this situation by instructing the jury in the charge "that its verdict must be unanimous as to a single offense or unit of prosecution among those presented." *Id.* at 772. Conversely, the defendant is not compelled to request an election. *See Ngo,* 175 S.W.3d at 747-48 (noting that when, among other scenarios, the State presents evidence of the perpetration of the same criminal act on different occasions the defendant may, but is not bound to, request the State to elect which specific act it relies on for conviction); *id.* at 747 n.34; *id.* at 748 ("A request for an election, however, is not a prerequisite for implementing Texas' constitutional and statutory requirement of jury unanimity"). Indeed, for a strategic purpose a defendant may choose not to request an election. *See Cosio,* 353 S.W.3d at 775 ("A defendant may choose not to elect so that the State is jeopardy-barred from prosecuting on any of the offenses that were in evidence").

Because evidence of more than one instance of a criminal act constituting the charged offense was presented at trial, an instruction on juror unanimity as to the specific instance was required. *Cosio,* 353 S.W.3d at 772. Its omission was an abuse of discretion.

Egregious Harm Analysis

Appellant did not object to the absence of a unanimity instruction in the charge but contends as a result his trial was fundamentally unfair. A party must generally make a proper objection in the trial court to preserve the error for appeal. *See* TEX. R. APP. P.

33.1(a). However, in criminal cases courts may "take notice of a fundamental error affecting a substantial right, even if the claim of error was not properly preserved." TEX. R. EVID. 103(e). Fundamental error includes jury charge errors resulting in egregious harm. *Baker v. State,* No. 02-14-00157-CR, 2015 Tex. App. LEXIS 846, at *4-5 (Tex. App.—Fort Worth Jan. 29, 2015, no pet.) (per curiam, mem. op. on reh'g, not designated for publication) (citing *Saldano v. State,* 70 S.W.3d 873, 887-89 (Tex. Crim. App. 2002)). Reversal then on a claim of egregious harm is possible "only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived of a fair and impartial trial." *Villarreal v. State,* 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Almanza v. State,* 686 S.W.2d 157, 171-72 (Tex. Crim. App. 1985) (op. on reh'g).

The harm must be actual rather than theoretical. *Villarreal,* 453 S.W.3d at 433 (citing *Cosio,* 353 S.W.3d at 777). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villarreal,* 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). Actual harm is shown if the error in the charge affected "'the very basis of the case,' 'deprive[d] the defendant of a valuable right,' or 'vitally affect[ed] a defensive theory.'" *Arrington v. State,* 451 S.W.3d 834, 840 (Tex. Crim. App. 2015) (quoting *Cosio,* 353 S.W.3d at 777). Our analysis takes into account the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the trial record as a whole. *Villarreal,* 453 S.W.3d at 433.

8

Entirety of the Jury Charge

In conjunction with selection of the presiding juror, and that person's duties, the charge instructed, "if you unanimously agree upon a verdict" the presiding juror must certify the verdict. But here such general language ensures only that the jurors agreed appellant engaged in the charged conduct at some point in time. *See Ngo,* 175 S.W.3d at 745 (commenting, as to substantively identical "boilerplate" instruction, "the jury could well have believed that they need only be unanimous about their 'verdict' of guilty or not guilty of the general offense [charged]"). Some jurors might have believed appellant touched B.G. only on the first occurrence to which she testified while others might have been convinced he committed the offense at her birthday party. Therefore analysis of the entire charge in this case might incline toward a finding of egregious harm. *See Arrington,* 451 S.W.3d at 841 ("Because the entire charge did not apprise the jury of the proper unanimity requirement, we conclude that this factor weighs in favor of finding egregious harm"). On the other hand, the court's error was the omission of an instruction rather than the inclusion of an erroneous instruction. *See Taylor v. State*, 332 S.W.3d 483, 493 (Tex. Crim. App. 2011) (contrasting omission of instruction with charge in another case which mis-instructed the jury).[4] Though perhaps inclining toward a finding of egregious harm in this case, we assign little weight to the entirety of the charge in our analysis. *See Cosio*, 353 S.W.3d at 777 (noting merely that charge "permitted" non-unanimous verdicts, and that "nothing in charges themselves militates against" an egregious harm determination).

---

[4] The other case referred to in *Taylor*, 332 S.W.3d at 493, was *Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996), in which the court found egregious harm from an instruction that "was 180 degrees opposite of what it should have been." *Hutch*, 922 S.W.2d at 172.

State of the Evidence

The State's case was made through the brief testimony of B.G. The jury did not hear medical evidence, the substance of B.G.'s statements at the CAC interview, or the words of her electronically-recorded outcry. Through the testimony of his two witnesses, appellant presented the defense that he was not guilty of the conduct charged, on either occasion to which B.G. testified, and he was definitely not present on her birthday. Because appellant's indecent conduct was described in the evidence only by B.G.'s testimony, the jury could not have convicted appellant without accepting her testimony. And there was little difference in her descriptions of appellant's actions on the two occasions to which she testified. On both occasions, she was seated watching television at her uncle's house when appellant touched her.[5] It is obvious also that the jury did not accept the defense witnesses' assertions of appellant's innocence.

To an extent, appellant's defense focused on his witnesses' insistence that appellant did not attend the birthday party, and thus could not have committed indecency on that occasion. To that extent, the state of the evidence differs from that in cases like *Ruiz v. State*, 272 S.W.3d 819 (Tex. App.—Austin 2008, no pet.), in which the defendant's theory left the jury with an "all-or-nothing decision." *Id.* at 826; *see Arrington*, 451 S.W.3d at 842 (discussing *Ruiz*); *Jourdan v. State,* 428 S.W.3d 86 (Tex. Crim. App. 2014). Nonetheless, the evidence does not present a likelihood that jurors voted for conviction but did not agree appellant committed indecency on one specific occasion. A juror who accepted the testimony appellant did not attend the birthday

---

[5] B.G. testified appellant touched her under her clothing on the first occasion and over her clothing at the birthday party.

party must have found he committed the offense on the first occasion B.G. described. And we see in the evidence no reason a juror who did not accept that testimony would have believed appellant committed the offense *only* at the birthday party. As we have noted, B.G.'s descriptions of the two occasions were very similar. We think a juror who believed her testimony that appellant touched her during her birthday party, over the strong defensive assertions he was not then present, almost certainly also believed appellant committed indecency on the first occasion. *See Taylor*, 332 S.W.3d at 493 ("It is unlikely that the jury believed that [Taylor] sexually assaulted the victim before he turned 17 years old but not after").

Argument

As noted from its quoted excerpts, the prosecutor's argument at times used singular pronouns when referring to the occurrence. But it would be an unwarranted conclusion that such expressions moved the jury toward reaching a non-unanimous verdict. Neither the State nor the defense told the jurors they must be unanimous as to the appellant's guilt on a single incident, but neither told the jury they could convict without unanimity. *Cf. Ngo,* 175 S.W.3d at 750; *Digman v. State*, 455 S.W.3d 207, 210-11 (Tex. App.—Amarillo 2015, pet. ref'd) (in both cases, prosecutors' argument emphasized jury's ability to convict without unanimity on particular conduct). Thus we do not find the argument of counsel weighs for or against a finding of actual harm.

Entirety of the Record

At oral argument, appellant argued that the simplicity of the charge and the evidence in this case heightens the risk of a non-unanimous verdict. As appellant

noted, the case involves only a single count alleging indecency but two distinct occasions of conduct. Because the jury was not made to understand that to find appellant guilty they must agree unanimously that he committed the offense on both or only one occasion, he argued, the jury was never required to consider the impact of the defensive evidence he was not present on one of the two occasions alleged. As appellant sees it, the straight-forward case presented by this record carries an even greater risk of non-unanimity than cases like *Arrington*, 451 S.W.3d at 837-39, which involved seven counts and evidence of multiple acts of indecent and assaultive conduct.

Under the egregious harm standard, reversal is possible only if the record shows actual rather than theoretical harm. *Bell v. State,* No. 05-13-01616-CR, 2015 Tex. App. LEXIS 3572, at *15-16 (Tex. App.—Dallas Apr. 10, 2015, no pet.) (citing *Nava v. State,* 415 S.W.3d 289, 298 (Tex. Crim. App. 2013)). From the entirety of the charge and the arguments of counsel, we find little to support a conclusion appellant suffered actual harm. We find the state of the evidence militates against a finding of actual harm. And we find appellant's contention based on the entirety of the record unpersuasive as indicative of actual harm. The omission of a unanimity instruction did not affect the very basis of the case, deprive appellant of the valuable right of a unanimous verdict or vitally affect his defensive theory so as to deprive him of a fair trial.

## Conclusion

The trial court abused its discretion by omitting the unanimity instruction, but appellant did not suffer egregious harm from the error, so it was not fundamental. We

overrule appellant's issues asserting egregious harm, and affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.